**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| VIONA WAWERU, individually and on Behalf of all other similarly situation,<br><br>    Plaintiff,<br><br>v.<br><br>FIFTH THIRD BANK; and<br>FIFTH THIRD BANCORP,<br><br>    Defendant. | Case No.: 1:18-cv-2260<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff Viona Waweru ("Plaintiff"), individually and on behalf of all others similarly situated, complains of the actions of defendants Fifth Third Bank and Fifth Third Bancorp (collectively, "Fifth Third," or "Defendants"), based on their personal knowledge regarding their personal circumstances and based on information and belief and the investigation of counsel as to all other allegations, as follows:

## I. NATURE OF THE CASE

1. Plaintiff and the Class members are Defendants' banking, credit card, and investment customer, who entrusted their personally identifiable information ("PII") to Defendants. Defendants betrayed the trust of Plaintiffs and the Class by publicly disclosing their Social Security Numbers.

2. On or about December 7, 2017, Defendants mailed an Overdraft Notification to Plaintiff and the Class via the United States mail, purporting to inform the Plaintiff and the Class that their accounts were overdrawn, the process to remedy the situation, and the fees and consequences of such if they failed to remedy the matter.

3. Defendants printed her Social Security Number, together with her address; on information and belief, Defendants printed the respective Social Security Numbers of each respective class member, together with their address, on the outside of each respective Overdraft Notification ("First Data Breach").

4. Plaintiff complained immediately to Defendants about the First Data Breach.

5. Despite being on notice of the First Data Breach, on or about December 14, 2018, Defendants mailed another Overdraft Notification to Plaintiff and the Class. On the outside of the Overdraft Notification sent to Plaintiff, Defendants again printed her Social Security Number, together with her address; on information and belief, Defendants printed the respective Social Security Numbers of each class member, together with their address, on the outside of each respective Overdraft Notification ("Second Data Breach").[1]

6. Defendants disregarded Plaintiff's and the Class Members' privacy and property rights by intentionally, willfully and/or recklessly failing to take the necessary precautions required to safeguard and protect Plaintiff's and the Class Members' PII from unauthorized disclosure.

7. Plaintiff's and the Class Members' PII was improperly handled, inadequately protected, and not kept in accordance with basic security protocols. The Data Breaches represent a flagrant disregard of Plaintiff's and the Class Members' rights, both as to privacy and property.

8. As a direct and proximate result of the Data Breaches, Plaintiff and the Class Members are at an imminent, immediate and continuing increased risk of identity theft and fraud.

9. Accordingly, Plaintiff and the Class Members seek redress against Defendants for, *inter alia*, violations of the FCRA, state consumer fraud acts, and common law. Plaintiff, on behalf

---

[1] The First Data Breach and Second Data Breach, when referred to collectively, will be referred to as the "Data Breaches."

of herself and the Class, seek actual and statutory damages under the FCRA, and/or nominal damages, injunctive relief, and attorneys' fees and costs.

## II. JURISDICTION AND VENUE

10. The Court has subject matter jurisdiction over this lawsuit, pursuant to 28 U.S.C. § 1331, because Plaintiff raises a federal question under the FCRA. This Court also has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332 as amended by the Class Action Fairness Act of 2005 because, on information and belief, the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which some members of the Classes are citizens of states different than Defendant. *See* 28 U.S.C. § 1332(d)(2)(A).

11. This Court also has personal jurisdiction over Defendants because they are authorized to do business and in fact do business in this State and Defendants have sufficient minimum contacts with this state, and/or otherwise intentionally avail themselves of the markets in this state through the promotion, marketing and sale of their products and services in this State, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

12. Pursuant to 28 U.S.C. § 1391, venue is proper in the Southern District of Indiana because Plaintiff resides in this District, Defendants are found in this District, and/or Defendants are subject to personal jurisdiction in this District.

## III. PARTIES

13. Fifth Third Bank is incorporated in the state of Ohio with its principal place of business located in Cincinnati, Ohio. Fifth Third Bank bills itself, on their website, as a bank that "prides itself on their community involvement and that they continue to invest the time, resources, and people to help improve lives in the communities they serve." Fifth Third Bank reports to

provide services across ten (10) different states with over 1,200 full-service locations. Fifth Third Bank's assets exceed over $140 billion.[2] Fifth Third Bank sent the Privacy Notification and Benefits Notification to Plaintiff and members of the class. Because the Social Security Numbers of Plaintiff and, on information and belief, the Class Members were printed on the outside of the envelopes of the Privacy Notification and Benefits Notification in violation of law, Plaintiff and the Class Members were damaged.

14. Fifth Third Bancorp maintains its principal place of business in Cincinnati, Ohio. Fifth Third Bank is the principal subsidiary of Fifth Third Bancorp. Together with Fifth Third Bank, Fifth Third Bancorp sent the Privacy Notification and Benefits Notification to Plaintiff and members of the class.

## IV. BACKGROUND FACTS

### A. Identity Theft

15. Identity theft occurs when someone uses an individual's PII, such as the person's name, Social Security Number, or credit card number, without the individual's permission, to commit fraud or other crimes.[3] The Federal Trade Commission explains that "[i]dentity theft is a serious crime. It can disrupt your finances, credit history, and reputation, and take time, money, and patience to resolve."

16. Similarly, Defendants admit that a "Stolen Identity Event means the fraudulent use of Your name, address, Social Security number, bank or credit card account number or other personally identifying information or other method of identifying You. This includes, but is not limited to, fraudulent use of Your personal identity to establish credit accounts, secure loans,

---

[2] https://www.53.com/content/fifth-third/en/customer-service.html
[3] *See* http://www.consumer.ftc.gov/articles/pdf-0014-identity-theft.pdf (last accessed September 16, 2013).

enter into contracts or commit crimes."[4]

17. In fact, Defendants admit that a name combined with a Social Security Number or tax identification number, and date of birth, and other information is what will allow Fifth Third to identify you.[5]

> **CUSTOMER IDENTIFICATION PROGRAM**
> In accordance with the USA PATRIOT Act, Federal law requires all financial institutions to obtain, verify, and record information that identifies each individual or entity opening an account. This includes all personal and commercial accounts, including loan and deposit accounts, as well as, trust, brokerage, insurance, and investment management accounts.
>
> **What This Means To Our Customers**
> When you open an account, you will be asked for your name, address, Social Security or tax identification number, date of birth (if applicable), and other information that will allow Fifth Third to identify you. You will also be asked to furnish your driver's license or other identifying documents. We are required to follow this procedure each time an account is opened, even if you are a current customer of Fifth Third.

18. Also, Defendants further admit that identity theft occurs when an unauthorized individual fraudulently uses any PII.[6]

> **Stolen Identity Event** means the fraudulent use of Your name, address, Social Security number, bank or credit card account number or other personally identifying information or other method of identifying You. This includes, but is not limited to, the fraudulent use of Your personal identity to establish credit accounts, secure loans, enter into contracts or commit crimes. Stolen Identity Event shall include Medical Identity Theft. Stolen Identity Event shall not include the theft or wrongful use of Your Business name, d/b/a or any other method of identifying a Business activity of Yours.

19. Identity theft crimes often involve more than just crimes of financial loss. Identity thieves may use stolen Social Security numbers and names to obtain a driver's license or official identification card in the victim's name but with their picture, to obtain government benefits or file a fraudulent tax return. Identity thieves also use stolen Social Security numbers to rent houses and apartments and/or obtain medical services in the victim's name. Identity thieves also have been known to give a victim's PII to police during an arrest, resulting in the issuance of an arrest warrant in the victim's name and an unwarranted criminal record.

20. According to the FTC, "the range of privacy-related harms is more expansive than

---

[4] https://www.53.com/content/dam/fifth-third/docs/legal/Summary%20of%20Insurance%20Benefits%20-%20ID%20Alert%20Basic.pdf
[5] https://www.53.com/content/damm/fifth-third/docs/legal/Privacy%20Notice%202017.pdf
[6] https://www.53.com/content/dam/fifth-third/docs/legal/Summary%20of%20Insurance%20Benefits%20-%20ID%20Alert%20Basic.pdf

economic or physical harm or unwarranted intrusions and that any privacy framework should recognize additional harms that might arise from unanticipated uses of data."[7]

21. In its 2012 Identity Fraud Report ("the Report"), Javelin Strategy & Research ("Javelin"), a leading provider of quantitative and qualitative research, quantified the impact of data breaches. According to the Report, individuals whose PII is subject to a reported data breach, like Defendants' Data Breaches, are nearly 10 times more likely than the general public to suffer identity fraud and/or identity theft. Moreover, there is a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported, and a high probability that criminals who may now possess Plaintiff's and the Class Members' PII and not yet used the information will do so later or re-sell it.

22. According to the Javelin Report, not only is there a substantially increased risk of identity theft and identity fraud for data breach victims, those who are further victimized by identity theft or identity fraud will incur an average fraud-related economic loss of $1,513 and incur an average of $354 of out-of-pocket expenses attempting to rectify the situation. Moreover, the mean resolution time of identity fraud was 12 hours of individual follow-up time.

23. The unauthorized disclosure of a person's Social Security number can be particularly damaging since Social Security numbers cannot be easily replaced like a credit card or debit card. In order to obtain a new Social Security number, a person must show evidence that someone is using the number fraudulently or is being disadvantaged by the misuse.[8]

24. Thus, a person whose PII has been stolen cannot obtain a new Social Security Number until damage has already been done.

---

[7] *Protecting Consumer Privacy in an Era of Rapid Change* FTC, Report March 2012, located at http://www.ftc.gov/os/2012/03/120326privacyreport.pdf.
[8] *See* Identity Theft and Your Social Security Number, SSA Publication No. 05-10064, October 2007, ICN 46327, located at http://www.ssa.gov/pubs/10064.html

### B.     Defendants' Data Breaches: The Publication of Social Security Numbers

25.    On or about December 7, 2017, Defendants sent an Overdraft Notification to Plaintiff and the Class via United States mail. According to the Overdraft Notification, it was mailed on behalf of "Fifth Third Bank," including but not limited to Defendants.

26.    The Overdraft Statement was comprised of paper folded over with the address printed on the front of the Overdraft Statement. In the Privacy Notification, Defendants claim to protect PII, stating, in part:[9]

| WHAT WE DO | |
|---|---|
| How does Fifth Third protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. |

27.    However, on the front of the Overdraft Statement where the mailing address was reflected, and where the individual's name should have been, the Defendants printed each respective customer's Social Security Number directly where the individual's name should have been. Plaintiff's mailing (with Social Security Number redacted) follows:



28.    On December 14, 2017, Defendants sent Plaintiff another form, preprinted letter which was again labeled Overdraft Statement. Again, the address/identification portion of the letter

---

[9] https://www.53.com/content/dam/fifth-third/docs/legal/Summary%20of%20Insurance%20Benefits%20-%20ID%20Alert%20Basic.pdf

of the mail reflected the Plaintiff's Social Security Number (Social Security Number redacted):



29. Upon receipt of the Overdraft Statements on December 20, 2017, Plaintiff immediately called the 1-800 number on the Overdraft Statement.

30. The representative requested that Plaintiff fax the Overdraft Statement to Defendants. Because Plaintiff expressed concerns about transmitting her Social Security Number via facsimile, Defendant requested she go to his nearest Fifth Third banking branch with the Overdraft Statement.

31. Defendants' representative claimed they would have someone from their corporate office reach out to them with a resolution.

32. Defendants never reached out to Plaintiff with an appropriate resolution.

33. Within 24 hours of not receiving proper assistance nor a resolution, Plaintiff was highly concerned that her Social Security Number had been compromised.

34. Defendants did not follow-up except for a letter dated December 27, 2017 in which Defendants offered to provide Plaintiff with one year of free credit monitoring service through Fifth Third Identity Alert, which was Defendants' own service.

35. On information and belief, Defendants printed the Social Security Numbers of the

Class Members on the envelope on similar Overdraft Statement notifications.

36. Thus, while Defendants have been on notice of the First Data Breach at least since December 7, 2017, Defendants have not taken steps to protect Plaintiff's Social Security Number, other than offer her one of their own services.

37. Nor have the Defendants provided a solution for rectifying the inadequate security protections that should be in place to prevent exactly this type of occurrence.

38. Because of Defendants' lack of urgency and follow-through after the First Data Breach, the Second Data Breach was able to occur.

39. By printing the Social Security Numbers of the Plaintiff and, on information and belief, Class Members on front of its mailing, Defendants flagrantly disregarded and/or violated Plaintiff's and Class Members' privacy and property rights, and harmed them in the process, by not obtaining Plaintiff's and the Class Members' prior written consent to disclose their PII to any other person – as required by the FCRA and other pertinent laws, regulations, industry standards and/or internal company standards.

40. Defendants flagrantly disregarded and/or violated Plaintiff's and the Class Members' privacy and property rights, and harmed them in the process, by failing to safeguard and protect and, in fact, wrongfully disseminating Plaintiff's and the Class Members' PII to unauthorized persons and the public domain.

41. Defendants flagrantly disregarded and/or violated Plaintiff's and the Class Members' privacy rights, and harmed them in the process, by failing to establish and/or implement appropriate administrative, technical and/or physical safeguards to ensure the security and confidentiality of Plaintiff's and the Class Members' PII to protect against anticipated threats to the security or integrity of such information. Defendants' unwillingness or inability to establish

and maintain the proper information security procedures and controls is an abuse of discretion and confirms its intentional and willful failure to observe procedures required by law, industry standards and/or their own internal policies and procedures.

42. Defendants' wrongful actions and/or inaction directly and/or proximately caused the publication of Plaintiff's and the Class Members' PII without their knowledge, authorization and/or consent.

43. As a direct and/or proximate result of Defendants' wrongful actions and the resulting Data Breaches, Plaintiff and the Class Members have incurred (and will continue to incur) damages in the form of, *inter alia*, (i) loss of privacy, (ii) the imminent, immediate and continuing increased risk of identity theft and identity fraud, (iii) out-of-pocket expenses to purchase credit monitoring, internet monitoring, identity theft insurance and/or other data breach risk mitigation products, (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and identity fraud, including the costs of placing a credit freeze and subsequently removing a credit freeze, (v) the value of their time spent mitigating the increased risk of identity theft and identity fraud, and/or (vi) deprivation of the value of their PII, for which there is a well-established national and international market.

## V. CLASS ACTION ALLEGATIONS

44. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this class action as a national class action on behalf of herself and the following Class of similarly situated individuals: all persons who were sent any mailings, on the outside of which their Social Security Numbers were printed, from

45. The Class specifically excludes Defendants, any entity in which Defendants have a controlling interest, Defendants' officers, directors, agents and/or employees, the Court and

Court personnel.

46. On information and belief, the putative Class is comprised of thousands, if not millions, of geographically dispersed people, making joinder impracticable.

47. Disposition of this matter as a class action will provide substantial benefits and efficiencies to the parties and the Court.

48. The rights of Plaintiff and each other Class Member were violated in a virtually identical manner as a direct and/or proximate result of Defendants' willful, reckless and/or negligent actions and/or inaction and the resulting Data Breaches.

49. Questions of law and fact common to all Class Members exist and predominate over any questions affecting only individual Class Members including, *inter alia*:

- A. Whether Defendants violated the FCRA by failing to properly obtain, maintain, secure or protect Plaintiff's and the Class Members' Social Security Numbers;

- B. Whether Defendants violated state consumer protection acts by publishing Social Security Numbers on the outside of mailings;

- C. Whether Defendants willfully, recklessly and/or negligently failed to maintain and/or execute reasonable procedures designed to prevent unauthorized access to Plaintiff's and the Class Members' Social Security Numbers;

- D. Whether Defendants were negligent in failing to properly safeguard and protect Plaintiff's and the Class Members' Social Security Numbers;

- E. Whether Defendants owed a duty to Plaintiff and the Class Members to exercise reasonable care in safeguarding and protecting their Social Security Numbers;

- F. Whether Defendants breached their duty to exercise reasonable care in failing to safeguard and protect Plaintiff's and the Class Members' Social Security Numbers;

- G. Whether, by publicly disclosing Plaintiff's and the Class Members' Social Security Numbers without authorization, Defendants invaded their privacy; and

        H.     Whether Plaintiff and the Class Members sustained damages because of Defendant's failure to safeguard and protect their Social Security Numbers.

50. Plaintiff and her counsel will fairly and adequately represent the interests of the Class Members.

51. Plaintiff has no interests antagonistic to, or in conflict with, the Class Members' interests. Plaintiff's lawyers are experienced in consumer class action cases.

52. Plaintiff's claims are typical of the Class Members' claims in that Plaintiff's claims and the Class Members' claims all arise from Defendant's failure to properly safeguard and protect their Social Security Numbers, and by publishing the Social Security Numbers.

53. A class action is superior to all other available methods for fairly and efficiently adjudicating Plaintiff's and the Class Members' claims. Plaintiff and the Class Members have been harmed as a result of Defendant's wrongful actions and/or inaction and the resulting Data Breaches. Litigating this case as a class action will reduce the possibility of repetitious litigation relating to Defendants' conduct.

54. Class certification, therefore, is appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

55. Class certification also is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

56. The expense and burden of litigation would substantially impair the ability of Class Members to pursue individual lawsuits to vindicate their rights. Absent a class action, Defendants

will retain the benefits of its wrongdoing despite its serious violations of the law.

## VI.   CAUSES OF ACTION

### COUNT I
### WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT

57.     Plaintiff incorporates the above allegations as if fully set forth herein.

58.     The FCRA requires consumer reporting agencies to adopt and maintain procedures for meeting the needs of commerce for consumer credit, personnel, insurance and other information in a manner fair and equitable to consumers while maintaining the confidentiality, accuracy, relevancy and proper utilization of such information. 15 U.S.C. § 1681(b).

59.     The FCRA defines a "consumer reporting agency" as:

> Any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

60.     The FCRA defines a "consumer report" as:

> [A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of establishing the consumer's eligibility for credit or insurance to be used primarily for personal, family, or household purposes; employment purposes, or any other purpose authorized under [15 U.S.C. §] 1681(b).

15 U.S.C. § 1681a(d)(1).

61.     Defendants are Consumer Reporting Agencies as defined under the FCRA because on a cooperative nonprofit basis and/or for monetary fees, Defendants regularly engage, in whole or in part, in the practice of assembling Plaintiff's and the Class Members' PII for furnishing

Consumer Reports to third parties in connection with assessing eligibility for credit.

62. Plaintiff's and the Class Members' PII constitute Consumer Reports because they bear on, *inter alia*, their credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, physical/medical conditions, and mode of living, which is used or collected, in whole or in part, for the purpose of establishing Plaintiff's and the Class Members' eligibility for credit to be used primarily for personal, family, or household purposes.

63. As Consumer Reporting Agencies, Defendants were required to adopt and maintain procedures designed to protect and limit the dissemination of consumer credit, personal, and other information in a manner fair and equitable to consumers while maintaining the confidentiality, accuracy, relevancy, and proper utilization of such information. Defendants, however, violated the FCRA by failing to adopt and maintain such protective procedures which, in turn, directly and/or proximately resulted in the wrongful dissemination of Plaintiff's and the Class Members' Social Security Numbers into the public domain.

64. Defendants' violations of the FCRA, as set forth above, were willful, or, at the very least, reckless, constituting willfulness.

65. As a direct and/or proximate result of Defendants' willful and/or reckless violations of the FCRA, as described above, Plaintiff's and the Class Members' Social Security Numbers were made accessible to unauthorized third parties in the public domain and compromised.

66. As a further direct and/or proximate result of the Defendants' willful and/or reckless violations of the FCRA, as described above, Plaintiff and the Class Members were (and continue to be) injured and have suffered (and will continue to suffer) the damages described in detail above.

67. Plaintiff and the Class Members, therefore, are entitled to compensation for their

actual damages including, *inter alia*, expenses for adequate credit monitoring and identify theft insurance, out-of-pocket expenses, such as costs for placing a credit freeze or removing a credit freeze, loss of privacy, deprivation of the value of their PII, and other economic and non-economic harm (as detailed above), or statutory damages of not less than $100 and not more than $1,000, each, as well as attorney's fees, litigation expenses and costs, pursuant to 15 U.S.C. §1681n(a).

## COUNT II
## NEGLIGENT VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

68. Plaintiff incorporates the above allegations as if fully set forth herein.

69. Defendants owed a duty to Plaintiff and the Class Members to safeguard and protect their Social Security Numbers. In the alternative, and as described above, Defendants negligently violated the FCRA by failing to adopt and maintain procedures designed to protect and limit the dissemination of Plaintiff's and the Class Members' Social Security Numbers for the permissible purposes outlined by the FCRA which, in turn, directly and/or proximately resulted in the theft and wrongful dissemination of Plaintiff's and the Class Members' Social Security Numbers into the public domain.

70. It was reasonably foreseeable that Defendants' failure to maintain procedures to safeguard and protect Plaintiff's and the Class Members' Social Security Numbers would result in an unauthorized third party gaining access to their Social Security Numbers for no permissible purpose under the FCRA.

71. As a direct and/or proximate result of Defendant's negligent violations of the FCRA, as described above, Plaintiff's and the Class Members' Social Security Numbers were made accessible to unauthorized third parties in the public domain and compromised.

72. As a further direct and/or proximate result of Defendants' negligent violations of

the FCRA, as described above, Plaintiff and the Class Members were (and continue to be) inured and have suffered (and will continue to suffer) the damages described in detail above.

73. Plaintiff and the Class Members, therefore, are entitled to compensation for their actual damages, including, *inter alia*, expenses for adequate credit monitoring and identity theft insurance, out-of-pocket expenses, such as costs for placing a credit freeze or removing a credit freeze, loss of privacy, deprivation of the value of their PII, and other economic and non-economic harm (as detailed above), as well as attorney's fees, litigation expenses and costs, pursuant to 15 U.S.C. §1681o(a).

### COUNT III
### NEGLIGENCE

74. Plaintiff incorporates the above allegations as if fully set forth herein.

75. Defendants owed a duty to Plaintiff and the Class Members to safeguard their PII.

76. Defendants breached their duty by failing to exercise reasonable care and failing to safeguard and protect Plaintiff's and the Class Members' PII.

77. It was reasonably foreseeable that Defendants' failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII would result in the unauthorized disclosure of Plaintiff's Social Security Number.

78. Plaintiff and the Class Members were (and continue to be) damaged as a direct and/or proximate result of Defendants' failure to secure and protect their PII in the form of, *inter alia*, expenses for adequate credit monitoring and identity theft insurance, out-of-pocket expenses, such as costs for placing a credit freeze or removing a credit freeze, loss of privacy, deprivation of the value of their PII, and other economic and non-economic harm (as detailed above), for which they are entitled to compensation.

79. Defendants' wrongful actions and/or inaction and the resulting Data Breaches

constituted (and continue to constitute) negligence at common law.

## COUNT IV
## INVASION OF PRIVACY BY PUBLIC DISCLOSURE OF PRIVATE FACTS

80. Plaintiff incorporates the above allegations as if fully set forth herein.

81. Plaintiff's and the Class Members' PII was (and continues to be) sensitive and personal private information.

82. By the virtue of Defendants' failure to safeguard and protect Plaintiff's and the Class Members' PII and the resulting Data Breaches, Defendants wrongfully published and disclosed Plaintiff's and the Class Members' PII to unauthorized persons.

83. Plaintiff's and the Class Members' PII is not of a legitimate public concern; publicity of their PII was, is and will continue to be offensive to Plaintiff and Class Members.

84. Plaintiff and Class Members were (and continue to be) damages as a direct and/or proximate result of Defendants' invasion of privacy by publicly disclosing their Social Security Numbers.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that (i) this action be certified as a class action; (ii) Plaintiff be designated the Class Representative; and (iii) Plaintiff's counsel be appointed as Class Counsel. Plaintiff, on behalf of herself and the Class Members, further requests that judgment be entered against Defendants, in favor of Plaintiff and the Class Members, for:

  I.   actual damages, consequential damages, statutory damages and/or nominal damages in an amount to be determined by the trier of fact;

  II.  punitive damages;

  III. injunctive relief;

IV.   pre- and post-judgment interest at the highest applicable legal rates;

V.   attorneys' fees and expenses incurred through trial and any appeals;

VI.   costs of suit; and

VII.   such other and further relief that this Court deems just and proper.

## JURY DEMAND

The Plaintiff requests trial by jury on all issues so triable.

Respectfully submitted,

\_\_\_/s/ Christopher Jeter_____
Christopher P. Jeter (#25905-49)
Marietto V. Massillamany (#24643-49)
MASSILLAMANY JETER & CARSON LLP
11650 Lantern Road, Suite 204
Fishers, Indiana 46038
Telephone: (317) 576-8580
Facsimile: (317) 203-1012

Joseph N. Williams (#25874-49)
James A. Piatt (#28320-49)
RILEY WILLIAMS & PIATT LLC
301 Massachusetts Avenue, Suite 300
Indianapolis, IN 46204
Telephone: (317) 633-5270
Facsimile: (317) 426-3348

*Attorneys for Plaintiff Viona Waweru*